Good morning, everybody. I guess you've been told that we're going to reverse the order of the first two cases this morning. So you haven't been told. Well, we are, because we have two different panels. And so the first case on the docket then this morning will be the people of the state of Illinois v. Joshua Rehmer, cause number 5-14-0570, and the state appeals. So, Ms. Shanahan, we're over your shocking surprise. Get everything out of your briefcase, and you may proceed. Yeah, I was kind of wondering why nobody was sitting in the tables here. May it please the court. My name is Sharon Shanahan, and I represent the people of the state of Illinois. In this case, Andrea Rehmer was outside her house with her brother, the defendant. The defendant struck Andrea, and she called the police. The police searched the house where Andrea lived with her mother, Donna Smith. Eventually, the defendant was located in the house. However, during the search for the defendant, the police located several guns. Since the defendant was convicted felon, he was charged with unlawful possession of a firearm, as well as the domestic battery. The defendant filed a motion to suppress the guns, which was granted, which results in an appeal before this court today. Now, before this court, there are two very distinct issues. Since this search occurred in the defendant's mother's house, did he even have standing to bring a motion to suppress? If so, and only if so, the second question is, did the police have authority to enter Mrs. Smith's home to look for the defendant? So unless the court has specific questions about the second issue, I'm going to focus on the standard issue. Well, I thought there was some question about getting permission to come in. One said they heard, somebody said you could come in, and the police, two, there's two testifying. One said no, and one said yes, come in. So that's a question of fact, isn't it? Yes, it is, but you only reach that testimony goes to the question of whether the entry was proper. Right. But before we even reach that, we have to know if the defendant can even ask that question, whether he can even file a motion to suppress, because if he has no standing, he has no constitutional right. And that's why I believe that we have to look at the standing issue before we look. They're both there. But if he has no standing, then we're done. If he has no standing. Didn't the state's evidence provide some evidence of standing? It is the defendant's burden to establish standing. The defendant presented one witness, only one witness, his mother. At the end of his testimony, the state asked for a directed verdict on the standing issue, and the trial court denied it. And at that point, the state had a choice to either stand on their standing issue and not present any evidence or go forward with evidence. I respectfully would disagree. I would say at that point, we then move into a motion to suppress, in which the defendant presents a prima facie case, which he did. And then the state presents its evidence. If the state then provides evidence that this creates a conflict of testimony about standing, can't the trial court consider that? And can't we also consider it? I don't think so. I think because there was a specific, I mean, theoretically, everybody could have walked out of the courtroom at the end of that ruling on standing.  And I think if the state hadn't asked for that ruling at that time, then yes, I would agree with you. If things had just proceeded from there, but because we have a decision on standing, then I think what follows that is not more evidence on standing. We're just back, we are just into a motion to suppress. The state has the burden of proof in trial, right? Yes. And let's just suppose they failed to present any evidence on a material element of the offense. At the close of their case, the defendant moves for a directed verdict. Yes. It's denied. The defendant then presents evidence that supplies that material element. Would we say, no, we're going to, you know, the jury found him guilty, but we're not going to look at any of the evidence the defendant presented? Well, I think pretrial rulings are, present a separate issue. And as I say, once the court decided to standing rudely, I think under Regas, the United States Supreme Court says that if the defendant fails to carry his burden of standing, then there's nothing. Let me get my thoughts right here. If the defendant fails to carry his burden of standing, then it cannot move forward from there. And here's where the court erred, and it is the position of the state that because the defendant has, if you look at the stand or not motions to suppress, it specifically says the burden, the defendant has the burden of providing a primary case. If he does, then the burden shifts to the state. That's not what the case law in standing says. The case law says if this is not, if you don't establish that you have standing here, then you cannot vicariously assert this. And it is the position of the state that once that trial court ruled on standing, a ruling that was very obviously wrong based on what the defendant presented, then we don't need to move forward. Now, having said all that, I think that it's a, yes, it is a, if you, if this court considers what happens after that, then certainly that makes the state's burden much harder. But I really think that under Regas that there is no, this is something I specifically look for, is a burden shift in standing. And I didn't find it. I did not find a burden shift when looking at standing. Your entire argument is premised on the idea, though, that we can only look at the evidence the defendant produced. Well, obviously it's a two-part argument. The first part, the standing argument, yes, is based on the fact that the defendant did not prove standing. And if you disagree with that and move forward, then, to the motion to suppress, then move to the second part of the state's argument. I would be glad to discuss why I feel like the trial court erred in granting the defendant's motion to suppress if that's what you want. I'm still asking about standing and what evidence we can say. To me, that's a major issue. I agree. And I feel, I don't know what else I can say to that other than I feel like under Regas, it is the defendant's burden to prove standing. And in researching the specific question that you've put before me, I can't say I found a case that said that's it, accepting my position. But I can say that when you look at motions to suppress, it talks about a burden shift. But when you look at standing, I found nothing that talked about a burden shift. And I think that's what you have to do is shift the burden if you're going to go beyond the testimony that the defendant presented to establish standing. Have I answered your position as far as not necessarily disagreeing with me, but as far as what the view, am I clear about what the state's position is? I mean, and I have a second problem. I couldn't find any cases either that really talked about whether the court can consider the state's evidence or the defendant's or the state's interest on the issue of standing. To me, because we have this case law that talks about shifting burdens in one area of law. And because it's absent in this area. And because Regas, and I know the cases that follow it, talk specifically about that it is well settled that an accused contesting assert bears the burden of proving standing. It doesn't say, and then it shifts to the state. I think that the evidence that came after Mrs. Smith testified, the evidence of the two police officers, would have more bearing on standing. Had there not been that specific request by the state for a ruling on standing. You think the court could have said, well, I want to reserve on this standing issue, state proceed. And now I understand in this case, the court did rule. That is, yes. And you think that would have made a difference if the court would have said, I'm going to reserve on this to state proceed with your evidence. I don't think so. Because despite the fact that the court might preserve ruling, testimony ends. I mean, the evidence presented ends at that point in time, despite the fact that the trial court preserves its right to rule in a later date. Thank you. Your time is up, so we have a chance on reply. All right. Mr. Whitney. Good morning, Your Honor. May it please the court and counsel. Your Honor, first of all, to take up the question that Justice Stewart posed, the state here has confused the burden of proof with the evidence that may be considered by a reviewing court in reviewing whether that burden of proof has been met. It's two separate questions. It's not an issue of burden shifting. It's what a reviewing court reviewing this matter de novo is allowed to look at and consider. And here it's very clear that this court may consider the entire record, including the entire record of the – including the state's evidence that the motion is a press hearing. As a matter of fact, we need only look at one of the cases cited by the state to find that to be the case. In its reply brief, the state cited People v. Nichols out of the Second District, paragraph 41, for the proposition that the defendant has the burden of demonstrating that he is standing to challenge the search. If we go to paragraph 44 of the same opinion, the Second District considers the trial testimony that was presented.  It is well established that a reviewing court may consider the testimony of the entire record in deciding the propriety of the court's ruling on a motion to suppress. Now, in that case, it was even trial testimony. Here we don't have to go that far. All we have to do is look at the entirety of the motion to suppress hearing. Secondly, even if I'm wrong about that, and I don't think – I think it's pretty well settled that this court may look at that entire record, but even if I'm wrong, the testimony of Donna Smith alone, the defendant's sole witness, directs a finding that this defendant had a reasonable expectation of privacy while at her home, including in the locked room, based on the facts that, one, he was a periodic overnight guest at his mother's home, was a court in privacy there, and he had personal effects stored in that home. All of that was presented during the defendant's case. And if we look at the – granted, there's no cases on all fours exactly, but if we look at the totality of the case laws as presented in our appellee's brief, it's clear that if you're an overnight guest, you're protected. You have a reasonable expectation of privacy. We don't know whether he was going to be an overnight guest that particular night, but he was a frequent overnight guest. And even more importantly – Is there any evidence in the record that he even might be an overnight guest on that evening in question? What the evidence was was that he was there to visit his mother. You know, we – an inference possibly could be drawn, but it is clear that his mother testified that he frequently spent the night there. Whether he was going to that day, the defense certainly didn't establish that. Well, as to the room that they searched, didn't his mother also testify, it's locked, I keep it locked, he's not allowed to go in there, something like that? No one is allowed to go in there. However, what we don't know is if he simply asked to go in there, whether she would open it for him. I mean, we can't put so much weight on the locking key. It's his mother. And he did have personal possessions stored there. And that was actually the same situation in People v. Alexander where the sister of the defendant had a lock on the garage, but the defendant in that case kept a lot of possessions there, frequently used the garage. So the lock and key may be one factor to consider. I wouldn't argue that, but it's only one factor, and it's certainly not dispositive. And then if we are correct on looking at the totality of the evidence, well, then it becomes even more clear that this defendant had standing because the State's own witnesses said, well, Donna Smith said that this was his bedroom, and they heard someone in there. Contrary to her saying no one can get in there, they heard someone in there. It later turned out that the defendant went up on the roof. There was an open window. They put two and two together. He was apparently in that room. And there's an intractable contradiction here where the State was basically arguing that it was the people, and I'm quoting, it was the people's position that it was the defendant's bedroom, but that he had not established that he had reasonable expectation of privacy in that place. The State was trying to have it both ways, saying it was Mr. Rayburn's bedroom for purposes of proving possession of the firearms, but not for the purposes of establishing standing. So, and again, their own witnesses talked about that. So I do think when we consider the totality of this, the lower court clearly had it right, that there's enough here to show that he had a reasonable expectation of privacy in that bedroom, in his mother's house, in the possessions found in the bedroom. Whether the guns belonged to him or not, he did have possessions there. With respect, I want to briefly talk about the second issue of my major honors because there's an important consideration here. There were some improprieties in the State's reply brief, in part two of its reply brief. Number one, it raised a new argument for the first time in the reply brief. That's clearly not permitted under Rule 341b7. It's in the reply brief for the first time that the State argued exigent circumstances existed, and that's clearly improper. The State didn't argue it in the court of law. The State didn't argue it in its opening brief. You can't switch horses in the reply brief. Now, we can understand why the State did that because the horse that was riding, the proposition that if you have valid cause to make an arrest, that law allows you to invade someone's home. That horse died in 1980 when New York was decided by the United States Supreme Court. So let me switch gears. The court of law already found there were no exigent circumstances and tried to raise a new argument in the reply brief. That's clearly not permitted. And then further, in making that argument, there was also a serious distortion of facts in the reply brief. On page 8 of the reply brief, the State says, in the case that Barr police arrived at Mrs. Smith's home minutes after defendant battered his sister. It repeats that claim in the same page, repeats it again on the bottom of page 9 and top of page 10, and that is simply belied by the record. Deputy Blackburn was specifically questioned about how long it took him to get to Donna Smith's home. He was the first officer to arrive, and his testimony was that it had taken him half an hour from the time of dispatch to the arrival of the home, and he did not know how long prior to the dispatch that the actual battery occurred. So it was asserted in the reply brief three times that while they arrived within minutes, therefore, there's exigent circumstances. Your Honors, I respectfully submit that's beyond pale and that this might be an appropriate time to remind the State of the vital distinction between spinning facts and inventing facts. It's 30 minutes, at least. It is 30 minutes. So, I mean, granted, within minutes could be within 500 minutes, I suppose. Two hours could be 120 minutes. Right, exactly. So, you know, it's minutes. Clearly, the implication was that this happened immediately, and that was in connection with their analysis of the Abney case. I don't know if the Court wants me to address the exigent circumstances argument further. I don't think this Court has the authority to even consider it. It was waived by the State. Didn't one of the police officers actually testify that there were no exigent circumstances? That is correct. The other deputy did say that. I mean, in those very words, right? Yes, and that's – and we have here a case where the defendant allegedly slapped his sister. Now, the State cites the Abney case, but in that case we have an armed suspect who pistol-whipped someone and then tried to shoot that person. That's clearly of a different order of magnitude of danger than someone being accused of slapping his sister at some unknown point in time in the past. Not only that, there were three other officers plus a canine there. There was no threat for this person to escape. There was no grave danger to the public. If you go down the list of factors, you know, there was – I guess technically you'd say it was a crime of violence, but it was not extreme violence. There was no evidence that he was armed. So, clearly, the test for exigent circumstances was not met in this case. So for these reasons, Your Honor, that both with respect to the standing issue and with respect to the substantive issue, no permission to enter the home, no warrant, no probable cause, plus exigent circumstances. At most, there was probable cause to arrest the person. That's it. That's not a valid reason to enter someone's home, kick in a closet, and while you're looking for them. And if there was no valid basis for entering the home, if it was an illegal entry into the home, obviously you don't even have to consider whether it was illegal separately to go into the closet. Police shouldn't have been there in the first place. We owe deference to the trial court on its findings of fact with respect to no permission and no permissive entry and with respect to no exigent circumstances. For all of these reasons, Your Honor, we respectfully request this court to affirm the sound decision of the circuit court in this case. Thank you. Thank you. Reply. In the defendant's brief, he really relies on Minnesota v. Olson for the fact that if a person is an overnight guest, they have an expectation of privacy. But he has stuck a word in there repeatedly that's not in Minnesota v. Olson. And that is periodic overnight guests. So Olson says an overnight guest has a reasonable expectation of privacy. So I periodically stay in a holiday inn in St. Louis when I'm in dog shows. And while I'm there, I have a reasonable expectation of privacy. But I don't have it now. I will two weeks from now when I go back. If he was there, though, at the time they came and arrested him at his mother's home, does he have to stay overnight? Yes, under Minnesota. Under that case, Your Honor. Under Olson, yes. But, you know, if he keeps his stuff there and he's there for the day. Stuff. He keeps his. Wait. Go ahead. I'm sorry. Please don't talk over me. I'm sorry. I apologize. If he has things there and he comes and he spends the day, he has no expectation of privacy. No, I don't think so. He has to spend the night. That's the key. It has to get dark. I think he has to stay. I mean, the expectation of privacy set forth in Minnesota v. Olson is that I have my clothes there. I have my over, you know, my makeup and my toothbrush and all of that stuff that for this night, this is my home. For this day, if I'm there for the weekend, for this weekend, this is my home. But to say that if I go to my son's house and I spend a week there, I have an expectation of privacy. I go to my son's house quite frequently. But when I'm not there, I don't have an expectation of privacy. This defendant was there. Here's why he was there. To see his mother's new car. That's why he was there. He was not there to spend the night. He was not there to stay. Is there a bright-line rule that a person has to be an overnight guest to have any reasonable expectation of privacy? I think there has to be more than just going to see your mom's new car. And that's the facts of this case. There certainly is nothing in Olson that indicates that a periodic overnight guest has an expectation of privacy. That a guest who has brought nothing with him, he just came to see, comes to see his mom's new car, has an expectation of privacy. The expectation of privacy, which is developed in Olson and in its prodigy and in other United States Supreme Court cases that develop an expectation, shows that you intend to stay there, that you have a home, a mini home. I mean, motorhomes have an expectation of privacy. But that's because you're going to stay there. If going to see someone's car, their new car, gives you an expectation of privacy in their home, then we have just blown open any... I don't think anybody's arguing that that sole factor gives an expectation of privacy. I think it's also important here that what this defendant had in this locked bedroom that he couldn't get into is never identified. It's stuff. It could be his cassette tapes from 20 years ago. It could be his high school trophies. There's no indication, as there was in the cases cited by the defendant, that he ran outside barely clothed and the clothes are in his mother's house. Or he used these tools to work on cars all the time. There's nothing that shows any indication of that. I have for just one other thing. Actually, two things. I know they're both very brief. I ask the court's indulgence. First of all, the waiver argument. The state's argument at trial and on appeal is where the trial court erred in concluding that the police could not enter the closet in the suspect's home without a warrant. That's the issue. The trial court's findings are part and parcel of the state's challenge to the trial court's order granting the motion to suppress. So there's no waiver. There is just a widening of the same argument that has been presented. Second of all, the state stands by its position that the police arrive quickly. As you said, 30 minutes. That's minutes. That's quickly. And I certainly would not assert to this court that the police arrive quickly if they arrive 360 minutes later. Thank you, Ms. Shanahan. Thank you both for your briefs and your arguments. This matter will be taken under advisement, and we'll issue a decision in due course. We're going to take a brief recess so we can change panels.